IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| TRISHA L. HAGEN,<br><br>                    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>                    Defendant. | CV 16-35-BLG-SPW-TJC<br><br><br>**FINDINGS AND<br>RECOMMENDATIONS OF<br>U.S. MAGISTRATE JUDGE** |

On April 7, 2016, Plaintiff Trisha L. Hagen ("Plaintiff") filed a complaint

pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial

review of the final administrative decision of the Commissioner of Social Security

("Commissioner") regarding the denial of Plaintiff's claim for  disability insurance

benefits ("DIB") and supplemental security income ("SSI") under Titles II and

XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383f.

(Doc. 1.)  On July 1, 2016, the Commissioner filed an Answer (Doc. 7) and the

Administrative Record ("A.R.").  (Doc. 8.)

Presently before the Court is Plaintiff's motion for summary judgment,

seeking reversal of the Commissioner's denial and remand for an award of

disability benefits, or alternatively for further administrative proceedings.  (Doc. 17.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 18, 19.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court makes the following recommendations.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI benefits in June, 2012.  (A.R. 199-212.)  Plaintiff alleged she has been unable to work since January 15, 2011.  (A.R. 199.)  The Social Security Administration denied Plaintiff's second application initially on April 12, 2013, and upon reconsideration on July 5, 2013.  (A.R. 150-152; 155-159.)

On August 5, 2013, Plaintiff filed a written request for a hearing before an Administrative Law Judge.  (A.R. 163.)  A hearing was held on April 29, 2014 before Administrative Law Judge Louis M. Catanese (the "ALJ").  (A.R. 47-99.)  On May 23, 2014, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 27-41.)  Plaintiff requested review of the decision on June 30, 2014.  (A.R. 21-23.)  The ALJ's decision became final on June 30, 2015, when the Appeals Council denied Plaintiff's request for review.  (A.R. 17-20.)  Thereafter, Plaintiff filed the instant action.

/ / /

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the

denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.    Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C.

§§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.    FACTUAL BACKGROUND

Plaintiff claims to suffer from severe impairments of asthma, fibromyalgia, shoulder arthritis, and bipolar disorders.  She asserts that these impairments render her incapable of performing work she previously performed, or any other substantial gainful employment.

### A.    The Hearing

A hearing was held before the ALJ on April 29, 2014, and the following testimony was provided.

#### 1.    Plaintiff's Testimony

The Plaintiff testified at the hearing before the ALJ in Billings, Montana. (A.R. 53-86.)  Plaintiff testified that she lives with her six-year-old daughter in

6

Livingston, Montana in a mobile home on ten acres of property belonging to her son.  (A.R. 53-55.)  Her son resides in a home next door to her.  (A.R. 54.)

Plaintiff has a valid driver's license, and testified that she usually drives once a day to pick up her daughter from school (ten miles) or from the school bus (one mile).  (A.R. 57-58.)  Plaintiff stated she is able to handle self-care, such as showering and dressing.  (A.R. 59.)  She generally is able to cook, although she testified that some days her hands hurt too much.  (A.R. 59.)  On "good days," Plaintiff cleans her house, and she at least attempted to garden in 2013.  (A.R. 59.)  She and her son have six dogs on the property, and she is able to ensure that they have food and water.  (A.R. 60.)  Two horses are also kept on the property, but Plaintiff testified that she only cares for them when her son is not around, and even then only sparingly.  (A.R. 61.)  She helps her daughter with homework and with her nightly bath.  (A.R. 62.)

For recreation, Plaintiff stated she likes to draw but cannot do so anymore, and instead colors for a half hour per week.  (A.R. 61-62.)  She watches television, and plays games on the computer when her hands do not hurt.  (A.R. 62.)  She gets coffee with a friend roughly twice per month.  (A.R. 62.)

Plaintiff worked for the railroad from 1995 until she was laid off in 1998 or 1999.  (A.R. 69.)  After being laid off, Plaintiff worked as an electrician in a

sawmill from 2000 to 2004.  (A.R. 67.)  She then worked as a bartender at the 49 Diner and Casino in Livingston from 2005 until January of 2011, at which time her position was eliminated.  (A.R. 65-67.)  After an unsuccessful attempt to return to school, Plaintiff attempted to work three to four hours per week at a greenhouse for roughly one month in 2012.  (A.R. 64-65.)  She has not been employed since then.

Plaintiff testified the "inconsistency with [her] pain" – both in location and intensity – is the biggest impediment to gainful employment.  (A.R. 69.)  She can have good days, but then may not have another good day for three or four days. (A.R. 70.)  Her level of pain is positively correlated with her level of activity in prior days, such that a high level of physical activity one day will result in greater pain the next day.  (A.R. 71.)  She reports suffering from headaches five times per week, with some lasting as long as eight hours.  (A.R. 71.)  Plaintiff uses a nebulizer every day to treat her asthma.  (A.R. 72.)

Plaintiff reports that she was diagnosed as bipolar in 2004.  (A.R. 73.)  She has not taken medication for her bipolar disorder since 2007 when she stopped taking Zoloft after she became pregnant with her daughter.  She reports that medicines she tried other than Zoloft made her suicidal.  (A.R. 73.)  Plaintiff reports memory and concentration problems secondary to her fibromyalgia ("fibro-fog"), and that she gets irritated with other people easily.  A.R. 74.

8

With respect to her physical capabilities, Plaintiff testified that she can sit for a half hour to an hour; stand for over an hour, on a good day; walk long enough to shop at the grocery store; and lift fifty pounds on a good day, and ten pounds on a bad day.  (A.R. 81-82.)  She estimates that she has a minimum of four bad days per week.  (A.R. 82.)

### 2.    Cole Hagan Williams

Cole Williams is Plaintiff's son.  (A.R. 86.)  He has contact with her every day.  (A.R. 86.)  He lived with the Plaintiff in her mobile home until 2014, when he moved into a house next door.  (A.R. 87.)  Mr. Williams reported that Plaintiff "can do anything" on some days, including working with horses or working on fences, but that once a week "she can't do nothing," and "can't even hardly get out of bed."  (A.R. 87.)

### 3.    Vocational Expert's Testimony

James Fortune, a Vocational Expert ("VE"), also testified before the ALJ. (A.R. 90-97.)  The ALJ asked Mr. Fortune four hypothetical questions.  First, the ALJ asked Mr. Fortune to assume a person the same age as Plaintiff, and with the same work history and educational background, who can perform no greater than light work; who could frequently balance, stoop, kneel, and climb ramps and/or stairs, and who could perform all other postural activities on an occasional basis;

who could frequently reach overhead bilaterally; who would need to avoid concentrated exposure to temperature extremes, noise, pulmonary irritants (such as gases and fumes), and workplace hazards (such as unprotected heights or dangerous machinery); and who would be limited to no greater than simple, routine, repetitive tasks as would be generally consistent with unskilled jobs. (A.R. 91-92.)  Mr. Fortune testified that such a person would be able to perform Plaintiff's past job of bartender.  Other jobs that person could perform include office helper, mail clerk, and cashier.  (A.R. 92-93.)

Second, the ALJ asked Mr. Fortune to assume the same person, but with the limitations that the person could have no greater than occasional interaction with members of the public and would be limited to frequent bilateral handling and fingering.  (A.R. 93.)  Mr. Fortune stated that the individual no longer would be able to perform the jobs of bartender or cashier, but could perform the jobs of mail clerk, office clerk, and office helper.  (A.R. 94.)  Additionally, that person could perform the jobs of parking enforcement person and garment sorter.  (A.R. 94-95.)

Third, the ALJ asked Mr. Fortune to assume the same person, but with no greater than sedentary work.  (A.R. 95.)  Mr. Fortune stated that person could perform the work of document preparer and escort vehicle driver.  (A.R. 95-96)

Finally, the ALJ asked Mr. Fortune to assume the same person, but with the addition of having two to three absences per month on a consistent basis.  Mr. Fortune said there were no jobs that would fit that description.  (A.R. 96.)

## B.    Medical Evidence

The administrative record also includes Plaintiff's medical records from the following health care providers.

### 1.    Treating Physician Evidence

#### a.    John Waldon McCahan, M.D.

Plaintiff saw Dr. McCahan at Bozeman Deaconess Rheumatology on August 9, 2012.  (A.R. 275-280.)  Dr. McCahan noted Plaintiff's complaints of having "all over joint pain" for four years in every joint every day, sleeping poorly and having hip pain while sleeping, longstanding rash on lower right leg, numbness in hands and feet, migraines, and vertigo.  (A.R. 275.)  Dr. McCahan also noted chronic problems of asthma, bipolar disorder, and migraines.  (A.R. 275.)  Based upon her diffuse tender points on examination, Dr. McCahan diagnosed Plaintiff with fibromyalgia.  (A.R. 279.)  In addition to the pain medications Plaintiff was already taking, Dr. McCahan prescribed amitriptyline for sleep quality.  (*Id*.)

/ /

/ /

11

### b.    Stefanie Lange, M.D.

Plaintiff was seen and treated by Dr. Stefanie Lange on approximately 19 occasions between January 28, 2010, and April 28, 2014.  Dr. Lange's initial treatment of Plaintiff was in follow-up to an emergency room visit for Plaintiff's asthma (A.R. 339-340), and asthma was Plaintiff's primary complaint for the first several times she saw Dr. Lange.  (*See generally* A.R. 339-362.)

Dr. Lange first noted Plaintiff's joint pain and headaches on April 9, 2012, and initially diagnosed Plaintiff with arthritis and migraines.  (A.R. 392-396.)  On July 5, 2012, Plaintiff reported to Dr. Lange that her joint pain was much worse, and that she cannot lift more than ten pounds on some days.  (A.R. 411-415.)  This visit resulted in a referral to Dr. McCahan, who confirmed the diagnosis of fibromyalgia discussed above.  Dr. Lange noted worsening headaches on November 11, 2012.  (A.R. 457-466.)  With respect to her ability to work, Dr. Lange noted on April 28, 2012 that Plaintiff "has been unable to work consistently since at least April 2012, which is the first time she presented to me with concerns about diffuse joint pain, muscle pain and weakness," noting further than Plaintiff still has days when she is in too much pain to get out of bed.  (A.R. 562.)

Dr. Lange also filled out several assessments related to Plaintiff's level of physical activity.  On August 7, 2012, she completed a "Physical Activity

Assessment" containing the following pertinent findings: in order to participate in employment, Plaintiff would require limited physical activity, frequent rest breaks, and flexible activities; Plaintiff could work no more than five to six hours per day; Plaintiff's disability is temporary; Plaintiff cannot lift more than twenty pounds; Plaintiff cannot stand or walk for more than three to four hours; and Plaintiff needs breaks from work as needed.  (A.R. 331-332.)

Dr. Lange completed another "Physical Activity Assessment" on September 6, 2012, containing the following pertinent alterations: Plaintiff could work no more than one to two hours per day; Plaintiff's disability is permanent; Plaintiff cannot lift more than five pounds; Plaintiff cannot stand or walk for more than one to two hours; Plaintiff cannot sit continuously for more than one to two hours; and Plaintiff needs frequent breaks from work and frequent (hourly) change of position.  (A.R. 328-329.)

Next, Dr. Lange completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" on April 28, 2014 containing the following pertinent findings: Plaintiff can lift up to ten pounds continuously, twenty pounds frequently, fifty pounds occasionally, and never greater than fifty pounds; Plaintiff can carry up to ten pounds frequently, twenty pounds occasionally, and never greater than twenty pounds; Plaintiff can sit for thirty minutes, stand for an hour,

and walk for thirty minutes without interruption; Plaintiff can sit for one hour,

stand for ninety minutes, and walk for one hour total in an eight-hour workday; and

the remaining hours in an eight-hour day must be spent laying down and/or resting.

(A.R. 570-575.)

### 2.    Other Source Evidence

#### a.    Donna Delich, LCSW

Plaintiff saw Donna Delich, a licensed clinical social worker, for mental

health evaluations and treatment approximately nine times between September 21,

2012, and November 7, 2013.  (A.R. 310-321, 539-541, 543-554.)  Recurring items

in Ms. Delich's notes include Plaintiff's bipolar disorder, depression, and struggles

with family members.  Ms. Delich consistently indicates Plaintiff's Global

Assessment Functioning ("GAF") to be 55.

Ms. Delich completed a "Medical Source Statement of Ability to Do Work-

Related Activities (Mental)" on April 24, 2014 containing the following pertinent

findings: Plaintiff has "moderate" limitations in understanding and remembering

simple instructions, carrying out simple instructions, and the ability to make

judgments on simple work-related decisions; Plaintiffs has marked limitations in

understanding and remembering complex instructions, carrying out complex

instructions, and the ability to make judgments on complex work-related decisions;

Plaintiff has mild limitations in interacting appropriately with the public,

interacting appropriately with supervisors, and interacting appropriately with co-

workers; and Plaintiff has a marked limitation in responding appropriately to usual

work situations and to changes in a routine work setting, although Ms. Delich notes

that this marked limitation is "mostly due to physical disability."  (A.R. 567-569.)

### 3.     Non-Examining Physician Evidence

#### a.     William Fernandez, M.D.

Dr. William Fernandez reviewed Plaintiff's medical records, but did not

examine her, and did not testify at the hearing.  He issued an opinion on April 11,

2013.  (A.R. 114-125.)  Dr. Fernandez opined that Plaintiff could lift and carry 20

pounds occasionally and 10 pounds frequently.  (A.R. 120.)  Dr. Fernandez found

Plaintiff can stand or walk for 6 hours in an 8-hour workday, and sit for 6 hours in

an 8-hour work day.  (A.R. 120.)  Dr. Fernandez also stated Plaintiff can perform

unlimited pushing/pulling; frequently climb ramps/stairs, balance, and stoop; and

occasionally climb ladders, crouch, and crawl.  (A.R. 120-121.)  He advised that

Plaintiff's exposure to noise should be limited due to her headaches.  (A.R. 122.)

#### b.     Marsha McFarland, Ph.D.

Dr. Marsha McFarland reviewed Plaintiff's medical and mental health

records, but did not examine her, and did not testify at the hearing.  She issued an

opinion on April 11, 2013.  (A.R. 102-113.)  With respect to her affective disorders, Dr. McFarland determined Plaintiff has mild restriction of activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence, or pace; and no repeated episodes of decompensation. (A.R. 107.)  Dr. McFarland concluded that Plaintiff is not disabled and is "capable of work of limited complexity which does not require sustained intense concentration," and "will do best at work that requires no more than brief and superficial interaction with the general public."  (A.R. 111, 113.)

### c.    David Jordan, M.D., and Robert Bateen, Ph.D.

Dr. David Jordan and Dr. Robert Bateen reviewed Plaintiff's records at the reconsideration phase, and affirmed the findings of Dr. Fernandez and Dr. McFarland.  (A.R. 128-138.)  There are no significant departures from the earlier reviews.

### C.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2011.  (A.R. 29.)  Second, the ALJ found that Plaintiff has the following severe impairments: "asthma, fibromyalgia, shoulder arthritis, and bipolar disorder."  (A.R. 29)  Third, the ALJ found that Plaintiff does

not have an impairment or combination of impairments that meets or medically

equals any one of the impairments in the Listing of Impairments.  (A.R. 30-32.)

Fourth, the ALJ determined that Plaintiff is unable to perform any past relevant

work.  (A.R. 39.)  Nevertheless, the ALJ stated Plaintiff has the RFC to:

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)
> except that she can frequently balance, stoop, and climb ramps and
> stairs; she can occasionally kneel, crouch, crawl, stoop, and climb
> ladders, ropes, or scaffolds; she can frequently reach overhead
> bilaterally, and frequently handle and finger; she should avoid
> concentrated exposure to temperature extremes, noise, pulmonary
> irritants such as gases and fumes, and work place hazards such as
> unprotected and dangerous machinery and she is limited to simple,
> routine, repetitive tasks and can have no greater than occasional
> interaction with members of the public.

(A.R. 32.)

The ALJ then found at Step Five that Plaintiff could perform the

requirements of representative occupations such as office clerk, mail clerk, and

parking enforcement official.  (A.R. 40-41.)  Thus, the ALJ found that Plaintiff

was not disabled.  (A.R. 41.)

## IV.   DISCUSSION

Plaintiff argues that the ALJ erred in the following ways: (1) failing to

properly credit the opinions of Plaintiff's treating sources (Doc. 17 at 2-11); (2)

failing to incorporate all of Plaintiff's impairments into the vocational consultant's

hypothetical questioning (Doc. 17 at 11-15); (3) failing to reconcile discrepancies

between the Dictionary of Occupation Titles ("DOT") and the VE's testimony

(Doc. 17 at 16-19); (4) improperly rejecting Plaintiff's testimony (Doc. 17 at 19-

23); and (5) improperly rejecting third-party testimony (Doc. 17 at 23-24).

### A.    The ALJ's Evaluation of the Treating Source Opinions

Plaintiff contends that the ALJ failed to give proper weight to the opinions

of Stefanie Lange, M.D., and Donna Delich, LCSW.  In response, the

Commissioner argues the ALJ properly considered the treating source evidence.

In assessing a disability claim, an ALJ may rely on "opinions of three types

of physicians: (1) those who treat the claimant (treating physicians); (2) those who

examine but do not treat the claimant (examining physicians); and (3) those who

neither examine nor treat the claimant (nonexamining physicians)."  *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995.)  The Commissioner applies a hierarchy

of deference to these three types of opinions.  The opinion of a treating doctor is

generally entitled to the greatest weight.  *Id*.  ("As a general rule, more weight

should be given to the opinion of a treating source than to the opinion of doctors

who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2).  "The

opinion of an examining physician is, in turn, entitled to greater weight than the

opinion of a nonexamining physician."  *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id. See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). Nevertheless, in that event the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that

the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").  The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain criteria. *Lester,* 81 F.3d at 830.  To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons."  *Id.*  To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' are

correct." *Reddick*, 157 F.3d at 725.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician."  *Lester*, 81 F.3d at 831 (emphasis in original).  However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

### 1.    Dr. Lange

The ALJ considered Dr. Lange's treatment notes (A.R. 36-38), as well as the "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" she   (A.R. 38.)  The ALJ afforded Dr. Lange's opinions regarding Plaintiff's functionality "little weight."  (A.R. 38.)  Because Dr. Lange's opinion that Plaintiff is disabled is contradicted by the non-examining physicians, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record" to reject Dr. Lange's opinion.  *Molina*, 674 F.3d at 1111.  The Court finds that the ALJ failed to do so.

The ALJ provided three reasons for rejecting Dr. Lange's opinions.  First, he concluded that Dr. Lange's opinions were "inconsistent with her own physical assessments in the record, which show consistently normal results, until the

claimant reported with her disability paperwork." (A.R. 38.) This finding is in error for at least two reasons. The ALJ did not explain which aspects of Dr. Lange's opinion he found to be inconsistent with the record, and "[s]uch boilerplate criticism, without more, is insufficient to reject a treating physician's opinion." *Belanger v. Berryhill*, 685 Fed.Appx. 596, 598 (9th Cir. 2017). In rejecting Dr. Lange's opinions, the ALJ simply did not provide a "detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof." *Magallanes*, 881 F.2d at 751.

In addition, the lack of objective findings and "normal" test results is not determinative in these circumstances. The Ninth Circuit Court of Appeals has recognized that "fibromyalgia's symptoms are entirely subjective," and "[i]n the context of a disease that is diagnosed primarily through subjective self-reports, the fact that a treating physician relied on subjective complaints is not in itself a valid basis to reject the physician's opinion." *Belanger,* 685 Fed.Appx. at 598. *See also Benecke v. Barnhardt*, 379 F.3d 587, 594 (9th Cir. 2004) ("[t]he ALJ erred by 'effectively requir[ing] objective evidence of a disease that eludes such measure") (quoting *Green-Younger v. Barnhardt*, 335 F.3d 99l, 108 (2nd Cir. 2003); *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (recognizing that fibromyalgia's "cause or causes are unknown, there is no cure, and . . . its symptoms are entirely

subjective") (quoting with approval from *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

Second, the ALJ rejected Dr. Lange's opinions because "there [are] no objective medical assessments that support such extreme limitations with sitting, standing, and walking," and also that those limits are inconsistent with Dr. Lange's opinions regarding Plaintiff's ability to lift weight. This finding is beset by the same problems discussed above. Namely, the ALJ does not identify which records support his claim of inconsistency, and also Plaintiff's chief severe impairment of fibromyalgia is not susceptible to the sort of "objective medical assessments" that the ALJ appears to require. The ALJ also does not explain how Plaintiff's ability to lift weight is at all related to her ability to sit, stand, and walk. That is, how is the fact that Plaintiff can occasionally lift 50 pounds in any way related to her durational limits on sitting, standing and walking?

Third, the ALJ rejected Dr. Lange's opinions as inconsistent both with Plaintiff's active lifestyle and Dr. Lange's instructions to Plaintiff that she remain as active as possible. (A.R. 38.) Again, the Court does not find these reasons to be specific and legitimate. First, as discussed in greater detail below, the record does not support the level of activity the ALJ charges to the Plaintiff. Moreover, Dr. Lange's advice to Plaintiff that she remain "as active as possible" has no bearing

Plaintiff's disability determination.  There is no indication that this instruction would be inconsistent with any of Plaintiff's conditions or the treatment for the conditions.  Moreover, "as active as possible" may still be far less active than is required to complete a full work day, and the ALJ does not point to any information contained within Dr. Lange's records to suggest that Plaintiff's level of activity should equate to a finding of non-disability.

Finally, as noted above, "[t]the ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2-6) in determining how much weight to afford to the treating physician's medical opinion."  *Ghanim*, 763 F.3d at 1161.  Here, the ALJ did not appropriately address these factors in discounting the weight to be afforded to Dr. Lange's opinions.

The Court finds, therefore, that the ALJ failed to provide specific and legitimate reasons' supported by substantial evidence in the record for according Dr. Lange's opinions lesser weight.  Accordingly, the ALJ erred with regard to Dr. Lange's opinion.

### 2.    Ms. Delich

At the time Plaintiff's claim was filed, the Social Security regulations separated medical evidence into two categories: (1) "acceptable medical sources," which includes licensed physicians and licensed or certified psychologists; and (2)

"other sources," which includes nurse practitioners, physician's assistants,

therapists, and counselors.  20 C.F.R. 416.913(a), (d) (amended March 27, 2017).

*Leon v. Berryhill*, 2017 WL 7051119, *3 (9th Cir. Nov. 7, 2017) (noting that prior

to March 27, 2017, opinions of "other sources," such as nurse practitioners were

not given the same weight as a physician's opinions).  Opinions of "other sources,"

are not entitled to the same deference.  *Molina v. Astrue*. 674 F.3d 1104, 1111 (9th

Cir. 2012).  The ALJ may discount opinions from "other sources" if the ALJ gives

"germane reasons" for doing so.  *Id.*

Because Ms. Delich is not a licensed physician or psychologist, she is not an

"acceptable medical source."  *See* 20 C.F.R. 416.913(a), (d) (amended March 27,

2017).  Thus, Ms. Delich is an "other source" whose opinion the ALJ could reject

for germane reasons.  *Molina*, 674 F.3d at 1111.  The Court finds the ALJ met that

standard here.

The ALJ stated the opinions of Ms. Delich are "directed little weight."

(A.R. 38).  In doing so, the ALJ relied heavily on Plaintiff's GAF score of 55 to

discredit Ms. Delich, as a GAF score of 55 indicates only moderate difficulties and

not marked difficulties as Ms. Delich opined.[1]  Though GAF scores are imprecise

---

[1] "A GAF score is a rough estimate of an individual's psychological, social, and
occupational functioning used to reflect the individual's need for treatment.
According to the DSM–IV, a GAF score between…51 to 60 describes 'moderate

indicators for a claimant's level of disability (*see Garrison*, 759 F.3d at 1002, n. 4), the ALJ is entitled to consider GAF scores in rendering his decision.  *Phillips v. Colvin*, 61 F.Supp.3d 925, 943 (N.D. Cal. 2014).  The Court has considered Administrative Message 13066 Plaintiff attached to her opening brief (Doc. 17-1), and finds that the ALJ did not contravene its guidance.  Specifically, the ALJ did not rely on Plaintiff's GAF scores to fix Plaintiff's functional capacity; rather, he relied on the GAF score of 55 assigned to Plaintiff by Ms. Delich to find an inconsistency in Ms. Delich's own ultimate opinion.  The fact that Ms. Delich's opinions are internally contradictory is a germane reason to assign her opinions lesser weight.

The ALJ also assigned lesser weight to Ms. Delich's opinion because she is not an acceptable medical source under § 416.913(a).  That finding is true, as far as it goes.  But the fact that Ms. Delich does not qualify as a medically acceptable treating source does not provide grounds, in and of itself, to reject her opinions as to the extent of disability.  The ALJ must still provide germane reasons for doing so.  Nevertheless, the Court finds ultimately that the ALJ provided a germane

---

symptoms' or any moderate difficulty in social, occupational, or school functioning." *Garrison v. Colvin*, 759 F.3d 995, 1003 (9th Cir. 2014) (internal citations omitted).

reason which is supported by substantial evidence for affording Ms. Delich's opinion lesser weight, and any error in rejecting her opinion solely because she is not an acceptable medical source provider is harmless.

### B.    The ALJ's Determination of Plaintiff's Credibility

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ made only a general credibility finding without providing clear and convincing reasons for rejecting her testimony.  The Commissioner counters that the ALJ properly evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834)). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). However, the ALJ may not reject the claimant's statements about the intensity and persistence of their pain or other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2).

Here, the first step of the credibility analysis is not at issue. The ALJ determined that Plaintiff's medically determinable impairments could reasonably

28

be expected to cause her symptoms, and there is no argument that Plaintiff is

malingering.  Therefore, the ALJ was required to cite specific, clear and

convincing reasons for rejecting Plaintiff's subjective testimony about the severity

of her symptoms.  The Court finds the ALJ failed to do so.

The ALJ found Plaintiff's credibility to be lacking for three reasons: first,

that "she has received limited and conservative treatment for both her mental and

physical impairments;" second, "her objective assessments of record reflect that

she is capable of work at least at the level of this decision's [RFC];" and third, "she

has continued with activities not expected of a totally disabled person," listing

several activities that the ALJ believes to demonstrate non-disability.  (A.R. 39.)

The Court finds that none of these constitute clear and convincing reasons to

discount the Plaintiff's credibility.

As to the first reason, the level of a claimant's treatment can be an important

indicator of the intensity and persistence of symptoms.  *See* 20 C.F.R. §

404.1529(c)(3).  Nevertheless the ALJ failed to describe the type of treatment

Plaintiff should have sought instead of the "conservative" treatments her providers

recommended, or whether there are more aggressive treatments which are available

to treat her conditions.  That deficiency is especially noteworthy with respect to

Plaintiff's complaint of fibromyalgia, "which is a disease for which there is no

known cause or cure." *Rose v. Berryhill*, 256 F.Supp.3d 1079, 1089 (C.D. Cal. 2017); *see also Corless v. Comm'r of Soc. Sec. Admin.*, 260 F.Supp.3d 1172, 1176 (D. Ariz. 2017) ("Here, the ALJ failed to describe the type of treatment Plaintiff purportedly should have sought for her fibromyalgia, a disease for which there is no known cause or cure.")  Additionally, Plaintiff's medical records indicate that she tried numerous medicines in varying doses during her period of treatment, with various degrees of effectiveness and side effects.  The ALJ does not establish, and the records do not demonstrate, that Plaintiff was refusing more invasive treatments than her providers were recommending, or that more aggressive treatments were available.

The ALJ's reliance on the lack of objective findings also does not provide clear and convincing grounds to discount Plaintiff's credibility in these circumstances.  As discussed above, fibromyalgia is not a condition that lends itself to the "objective assessments of record" that the ALJ apparently finds lacking.  As the U.S. District Court for the District of Arizona held in *Kline v. Colvin*, "Plaintiff's inability to point to objective medical evidence substantiating the intensity of the pain and fatigue caused by her fibromyalgia is unremarkable, and does not constitute grounds for discounting Plaintiff's testimony."  140 F.Supp.3d 912, 921 (D. Ariz. 2015).  There, the court pointed to SSR 12-2p, which

it noted "specifically contemplates that there will be cases where 'objective medical evidence does not substantiate a person's statements about the intensity, persistence, and functionally limiting effects' of his or her fibromyalgia symptoms." *Id*.

Finally, the ALJ's finding that Plaintiff's level of activity is inconsistent with that of a totally disabled person is also not sufficient.  In making this finding, that ALJ cited such activities as "independent personal care, caring for her daughter, running a ranch with her mother, reading books and playing with her daughter, cleaning, taking care of dogs and cats, taking care of her mother, preparing meals, doing laundry, doing some gardening, driving, getting outside twice a day, and shopping." (A.R. 39.)  While the level of a Plaintiff's activities may certainly be considered in assessing credibility, the activities listed in this case do not constitute a clear and convincing basis to discredit Plaintiff's testimony in this case.  The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) and *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Here, the ALJ does not discuss the extent to which Plaintiff participates in any of these activities, and the ALJ certainly does not establish that Plaintiff participates in these activities at a sufficient rate to conclude that she can complete an eight-hour workday.  In addition, the fact that the Plaintiff can occasionally complete these tasks is not in any way inconsistent with her testimony.  She testified that she is quite capable of performing certain physical tasks on her good days, while she is completely incapable of performing the same tasks on her bad days.  Finally, the ALJ does not discuss the Plaintiff's limitations in engaging in these activities, and does not accurately characterize the nature of at least some of those activities.  For example, while there is an isolated statement in a treatment note that Plaintiff runs a ranch, it is clear from the Plaintiff's testimony and the record as a whole that the Plaintiff does not engage in any activity which could be remotely characterized as "running a ranch."

Therefore, the Court finds the ALJ failed to provide specific, clear and convincing reasons for his conclusion with respect to Plaintiff's credibility.

### C.    The ALJ's Evaluation of Lay Witness Testimony

Plaintiff also argues the ALJ failed to cite germane reasons to discount the testimony of her son, Cole Williams.  The Commissioner argues that the ALJ properly considered Mr. Williams' testimony.

"Lay testimony as to a claimant's symptoms is competent evidence which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).  Competent lay witness testimony "*cannot* be disregarded without comment." *Id.* (emphasis in original).  The ALJ is not, however, required to discuss every witness's testimony on an individualized, witness-by-witness basis.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[I]f the ALJ gives germane reasons for rejecting the testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

The ALJ explained that he "has considered [Mr. Williams'] testimony in terms of helping to understand the severity of the claimant's various symptoms over time," but that the testimony "is given little weight with respect to assessing the claimant's current functional limitations because of its high degree of subjectivity, and its lack of medically acceptable standards." (A.R. at 34.)  The most notable testimony Mr. Williams gave is that the Plaintiff "can't do nothing" and "can't hardly get out of bed" "once a week," which, if true (or even if true only every other week), would eliminate her from the jobs the VE proposed she could

33

perform.  (*See* A.R. at 87; 96 (VE testifying that there are no jobs Plaintiff could perform while missing two to three days per month on a consistent basis).)  The ALJ did not discuss this testimony from Mr. Williams.

As explained, the only reasons the ALJ provided for rejecting Mr. Williams' testimony are that it was subjective and lacked medically acceptable standards. However, the frequency at which the Plaintiff "can't hardly get out of bed" is not subjective, and her son's testimony's "lack of medically acceptable standards" is irrelevant because it is not medical testimony.  It is simply lay testimony as to Mr. Williams' observation of his mother's condition, which the ALJ is required to consider.

Therefore, the Court finds that the ALJ erred in failing to provide germane reasons for rejecting Mr. Williams' testimony.

### D.    Remaining Issues

Because the Court concludes that the ALJ failed to properly credit Dr. Lange's opinion and the testimonies of both the Plaintiff and Mr. Williams, the Court need not reach Plaintiff's remaining issues regarding the hypotheticals to the VE or the relationship between the DOT ratings and the jobs the VE determined Plaintiff could perform.  These last two issues are inextricably linked to the ALJ's determination of Plaintiff's RFC, and are therefore moot due to the ALJ's errors in

determining Plaintiff's RFC discussed above.  On remand, the ALJ should incorporate any changes in Plaintiff's RFC when inquiring of the VE as to jobs Plaintiff can perform.

## V.    REMAND OR REVERSAL FOR BENEFITS

Plaintiff asks the Court to reverse the decision and grant her benefits.  (Doc. 17 at 24.)  "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court."  *Reddick v. Chater*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall re-evaluate Plaintiff's credibility and the lay witness testimony.  The ALJ shall also properly evaluate the opinion of Plaintiff's treating physician, Dr. Lange.  The ALJ shall either support his findings with specific and legitimate

reasons or afford Dr. Lange's opinion greater weight.  The ALJ shall further consider the evidence of Plaintiff's fibromyalgia and reconsider whether Plaintiff can perform work in the national economy based upon a hypothetical that incorporates of all of her impairments and limitations supported by the record.

## VI.    CONCLUSION

Based on the foregoing findings, the Court recommends that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 26th day of February, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge